# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TERRY BLACK'S BARBECUE, LLC § <br> AND TERRY BLACKS BARBECUE § <br> DALLAS, LLC, § <br>     *Plaintiffs* § <br> § <br> v. § <br> §     **Case No. 1:20-CV-665-RP** <br> STATE AUTOMOBILE MUTUAL § <br> INSURANCE COMPANY AND § <br> RUCKER-OHLENDORF INSURANCE, § <br>     *Defendants* § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:  THE HONORABLE ROBERT PITMAN**
       **UNITED STATES DISTRICT JUDGE**

Before the Court are State Automobile Mutual Insurance Co.'s Motion for Judgment on the Pleadings, filed July 24, 2020 (Dkt. 11); Plaintiffs' Response in Opposition to Motion for Judgment on the Pleadings, filed November 27, 2020 (Dkt. 24); and State Automobile Mutual Insurance Co.'s Reply, filed December 4, 2020 (Dkt. 25). On September 25, 2020, the District Court referred the above motion and related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.  Background

Plaintiffs Terry Black's Barbecue, LLC and Terry Black's Barbecue Dallas, LLC ("Plaintiffs") are Texas limited liability companies that own and operate two Terry Black's Barbecue dine-in restaurants in Austin and Dallas, Texas. Defendant State Automobile Mutual Insurance Company ("State Auto"), an Ohio corporation, issued Plaintiffs identical commercial property insurance

policies (collectively, the "Policy") covering their respective business locations from October 2, 2019 to October 2, 2020. Dkt. 1-1 at 83. The Policy generally provides coverage for direct losses of or damage to each Plaintiff's property and business personal property at its premises, with specified exclusions. Dkt. 1-1 at 137. The Policy also contains an Exclusion of Loss Due to Virus or Bacteria Endorsement. This exclusion applies to the Commercial Property Coverage Form, which excludes coverage for loss or damage caused by or resulting from "any virus." *Id.* at 136.

The Policy contains a Business Income (and Extra Expense) Coverage Form providing coverage to Plaintiffs for loss of business income and extra expenses (commonly referred to as "business interruption losses") during the necessary suspension of their operations during a restoration period caused by direct physical loss or damage to Plaintiffs' business property. *Id.* at 196. The Policy also contain a Restaurant Extension Endorsement. This endorsement provides coverage for business interruption losses from the suspension of business operations "due to the order of a civil authority" resulting from the actual or alleged exposure of the described premises to a contagious or infectious disease. *Id.* at 206.

Plaintiffs state in the Petition that the World Health Organization declared the COVID-19 outbreak a global pandemic on March 11, 2020. Shortly thereafter, the Centers for Disease Control and Prevention issued guidance on slowing the spread of the virus, including advising the public to observe social distancing and avoid large gatherings. State and local governments issued many orders to protect public health by limiting the spread of COVID-19, including orders limiting gatherings and restricting operation of non-essential businesses. Relevant here, on March 19, 2020, the Governor of Texas issued Executive Order No. GA-08, ordering that:

> In accordance with the Guidelines from the President and the CDC, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms or massage parlors; provided, however, that the use of drive-thru, pickup, or delivery options is allowed and

> highly encouraged throughout the limited duration of this executive order.

Dkt. 11-6 at 4.[1] The order remained in effect until April 3, 2020. On March 17, 2020, the City of Austin ordered all food establishments "to close common dining areas open to the public until May 1, 2020," encouraging them to "provide take-away or no-contact delivery food service designed to limit exposure between individuals." *Order of Control for Bars and Restaurants* (March 17, 2020).[2] Similarly, on March 31, 2020, Dallas County Judge Clay Jenkins issued a Stay Home Stay Safe Order, requiring "all individuals anywhere in Dallas County to shelter in place" and ordering that:

> Restaurants with or without drive-in or drive-through services and microbreweries, micro-distilleries, or wineries may only provide take out, delivery, or drive-through services as allowed by law. In-person service is prohibited. Customers may order and pay inside, but are prohibited from waiting inside the restaurant for their food. All food must be brought outside to customers. To allow for increased access to restaurants, this Order hereby suspends all laws and regulations prohibiting people from walking in a drive-through.

Dkt. 11-4 at 2. The Dallas order remained in effect through April 3, 2020. These orders have expired, but other civil authority orders remain in effect restricting the number of people allowed at Plaintiffs' restaurants.

As a result of the civil authority orders, Plaintiffs allege that they have "curtailed and suspended their usual and customary business operations, confining their operations to the very limited extent that is both safe and possible given the ordered restrictions." Dkt. 1-1 ¶ 15. Plaintiffs allege that

---

[1] "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[2] https://www.austintexas.gov/department/covid-19-information/orders-rules (last visited December 14, 2020). The parties did not attach this City of Austin Order to the Complaint, but the Court may take judicial notice of matters of public record. *Firefighters' Retirement Sys., v. EisnerAmper*, 898 F.3d 553, 558 n.2 (5th Cir. 2018).

they have suffered "business interruption and a loss of business income" as a result of the civil authority orders, and submitted a claim to State Auto to recover for those losses. *Id.* ¶ 16. On April 8, 2020, State Auto denied Plaintiffs' claim, contending that Plaintiffs' losses were not covered under the terms of the Policy.

Plaintiffs filed this suit in state court on May 14, 2020, against State Auto and Rucker-Ohlendorf Insurance ("ROI"), the insurance broker who sold Plaintiffs the Policy. Plaintiffs assert claims against State Auto for breach of contract, breach of the common-law duty of good faith and fair dealing, and violations of the Texas Insurance Code, and request a declaratory judgment. *See Terry Black's Barbecue v. State Auto. Mut. Ins. Co.,* D-1-GN-20-002659 (250th Dist. Ct., Travis County, Tex. May 14, 2020) (Dkt. 1-1 at 7). Plaintiffs also alleged that ROI was negligent in failing to "evaluate the sufficiency of the coverage limits it was recommending and selling to Plaintiffs." *Id.* ¶ 45.

On June 25, 2020, State Auto removed this case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1446, and shortly thereafter filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). On July 27, 2020, Plaintiffs filed a Motion to Remand, arguing that State Auto's removal was defective. On July 29, 2020, the District Court granted Plaintiffs' request to file a response to the Rule 12(c) Motion after the Court ruled on the Motion to Remand. On November 15, 2020, the undersigned Magistrate Judge issued an Interim Report and Recommendation recommending that the District Court deny Plaintiffs' Motion to Remand and dismiss ROI based on fraudulent joinder. The District Court adopted the Interim Report and Recommendation on November 23, 2020. Subsequently, Plaintiffs filed their Response to Safe Auto's Rule 12(c) Motion, and Safe Auto filed its Reply. Accordingly, the Rule 12(c) Motion is ripe for adjudication.

## II.     Legal Standards

The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III.     Analysis

In its Motion for Judgment on the Pleadings, State Auto argues that Plaintiffs' breach of contract claim fails because Plaintiffs' claim for business interruption losses due to the COVID-19 pandemic is not covered under the Policy. Specifically, State Auto contends that the commercial

5

property Policy provides coverage only for "direct physical loss of or direct physical damage to property," and because Plaintiffs have failed to allege any damage or physical loss to their property, the Policy does not cover the claim. State Auto argues that Plaintiffs are attempting to recover for purely economic losses to their restaurants due to the COVID-19 pandemic, which are not covered under the Policy.

State Auto further contends that even if Plaintiffs had suffered a direct physical loss or damage to their property, the virus exclusion provision would bar their claim. State Auto also argues that civil authority coverage is unavailable in this case because the civil authority orders did not prohibit Plaintiffs from accessing their premises, which is a prerequisite to coverage. Finally, State Auto argues that because Plaintiffs have not suffered a covered loss under the Policy, their extracontractual claims fail.

In response, Plaintiffs argue that they have alleged a plausible breach of contract claim because COVID-19 and the civil authority orders caused Plaintiffs to suffer "a direct physical loss of their properties." Dkt. 24 at 13. Plaintiffs contend that "[t]he Civil Authority orders in tandem with the physical damage or loss caused by damage from the infectious disease and its risk of transmission, are both direct physical losses to the subject properties because use of and access to the operations of the restaurant properties for their intended purposes was suspended, and had to be physically altered, limited or prohibited." *Id.* Alternatively, Plaintiffs argue that a direct physical loss or injury is not required under the Policy because, under the Restaurant Extension Endorsement, "the combination of mere exposure (alleged or actual) to a contagious or infectious disease and the suspension of operation caused by a Civil Authority order, is all that is needed to have a covered loss." *Id.* at 3. Accordingly, Plaintiffs argue that they have stated a plausible claim for relief.

### A. Texas Insurance Law

The parties agree that Texas law governs this diversity action.[3] "Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). "Unless the policy dictates otherwise, courts give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017). "The paramount rule is that courts enforce unambiguous policies as written." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and courts construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see also Pan Am*, 959 F.3d at 674 ("If an insurance contract, just like any other contract, uses unambiguous language, that's that.").

> [U]nder Texas contract law, "ambiguity" means more than "lack of clarity." A policy is not ambiguous merely because different parties—or different judges—offer conflicting interpretations. . . . A policy is only ambiguous if, giving effect to all provisions, its language is subject to two or more reasonable interpretations.

*Id.* If a policy is ambiguous, a court must resolve the uncertainty by adopting the construction that most favors the insured. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). "The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *Id.*

The Court examines the relevant provisions of the Policy to determine whether coverage exists.

---

[3] In a diversity action, federal courts are bound to apply the forum state's substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, the Court must apply Texas law in this case.

### B. No Coverage under Business Income (and Extra Expense) Coverage Form

The Business Income (and Extra Expense) Coverage Form provides, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension"[4] of your "operations"[5] during the "period of restoration."[6] The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.[7]

Dkt. 1-1 at 207. In other words, to trigger coverage under this provision, the insured party must show that there was a suspension of business operations stemming from a "direct physical loss of or damage to property." *Id.* The Policy does not define "direct physical loss."

Plaintiffs argue that they have suffered "a direct physical loss of their properties" due to COVID-19 and the related civil authority orders. Dkt. 24 at 13. Plaintiffs argue that "[t]he Civil Authority orders in tandem with the physical damage or loss caused by damage from the infectious disease and its risk of transmission, are both direct physical losses to the subject properties because use of and access to the operations of the restaurant properties for their intended purposes was suspended, and had to be physically altered, limited or prohibited." *Id.* Plaintiffs argue that the term direct physical loss is ambiguous and that Plaintiffs' interpretation that "[t]he term 'loss' reasonably encompasses Plaintiffs' inability to have its Property safely fully operated and occupied." *Id.* at 12.

---

[4] "Suspension" is defined as "the slowdown or cessation of your business activities" Dkt. 1-1 at 739.

[5] "Operations" is defined as "business activities occurring at the described premises." *Id.*

[6] "Period of restoration" means the period of time that begins "72 hours after the time of direct physical loss or damage for Business Income Coverage" or "immediately after the time of direct physical loss or damage for Extra Expense Coverage." *Id.*

[7] "Covered Causes of Loss" is defined in the Causes of Loss-Special Form as "direct physical loss unless the loss is excluded or limited in this Policy." *Id.* at 445.

8

A provision is not ambiguous merely "because the parties to a lawsuit offer conflicting interpretations of the contract's provisions." *Nassar*, 508 S.W.3d at 258. If only one interpretation of a provision is reasonable under the circumstances, the provision is unambiguous. *Id.* Only if the parties identify different, reasonable interpretations is a provision ambiguous and construed in favor of the insured. *Id.*

The Court finds that the term "physical loss" is not ambiguous. Plaintiffs' interpretation is unreasonable because it focuses on the word "loss" while ignoring the Policy's unambiguous requirement that there must be a "direct physical loss of or damage *to property*" in order to trigger coverage. Dkt. 1-1 at 207 (emphasis added). Notably, the Policy is a commercial property insurance policy insuring Plaintiffs' buildings, business personal property in or around those buildings, and loss of income from losses to that property. While the Policy does not define a "direct physical loss of property," the Fifth Circuit has stated that "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006).

> The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Id.* (quoting 10A COUCH ON INS. § 148:46 (3d ed. 2005)).

In order to trigger coverage under a commercial property policy, "physical loss" requires there to be some "distinct, demonstrable, physical alteration of the property," as opposed to merely economic losses. *Ross v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *6 (N.D. Tex. July 4, 2019) (quoting 10A COUCH ON INS. § 148:46 (3d ed. 2010)); *see also Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) (noting that "[t]he language

9

'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper").

Although the Fifth Circuit has yet to address whether COVID-19 and related civil authority orders can qualify as a physical loss of or damage to property under property insurance policies, district courts in this Circuit have determined that they do not. In *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020), owners of several barbershops sought coverage under their insurance policies for business interruption losses due to the COVID-19 pandemic and related civil authority shutdown orders. While Senior District Court Judge Ezra acknowledged that some courts outside the Fifth Circuit "have found physical loss even without tangible destruction to the covered property," such as when a noxious odor permeated a building causing it to become uninhabitable, the district court stated that, "within our Circuit, the loss needs to have been a 'distinct, demonstrable, physical alteration of the property.'" *Id.* at 5 (quoting *Hartford*, 181 F. App'x at 470). The court found that COVID-19 does not produce a direct physical loss to property like "a noxious odor that makes a business uninhabitable"; therefore, the plaintiffs failed to plead "a direct physical loss" to property to trigger coverage. *Id.*

Similarly, in *Sultan Hajer d/b/a Rug Outlet v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *2 (E.D. Tex. Dec. 7, 2020), the Eastern District of Texas rejected the plaintiff's argument that its business interruption losses incurred during the COVID-19 shutdown of non-essential businesses constituted a "direct physical loss of or damage to property" under the property insurance policy. Relying on the same policy language at issue here, plaintiff argued that because the policy did not define "direct physical loss," the term was ambiguous and should include the plaintiff's "inability to have his Property safely fully operated and occupied." *Id.* The

10

court disagreed, reasoning that "[t]he scope of the term 'physical loss' is far narrower than plaintiff contends and is only reasonably read in context as meaning 'a distinct, demonstrable, physical alteration of the property.'" *Id.* (quoting *Hartford*, 181 F. App'x at 470). Because the plaintiff had suffered only economic damages and had not alleged any tangible damage or loss to his store, his claim was not covered under the terms of the policy. *Id.* at 3; *see also Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00087-KS-MTP, --- F. Supp. 3d ----, 2020 WL 6503405, at *3 (S.D. Miss. Nov. 4, 2020) (holding that plaintiff's business interruption losses due to the COVID-19 pandemic were not covered under policy where property was not damaged and plaintiff was not permanently dispossessed of any insured property); *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, No. 5:20-CV-00680-OLG, 2020 WL 6578417, at *6 (W.D. Tex. Oct. 26, 2020) (noting that "in recent months, numerous courts—including at least one court in this District and Division—have held that the lost *use* of a property due to the Covid-19 pandemic and/or government shutdown orders did not constitute 'direct physical loss of' a property such that it may be the basis for a claim for loss of business income").[8]

---

[8] The great majority of courts outside the Fifth Circuit also have held that COVID-19 and related civil authority shutdown orders do not constitute a direct physical loss of property under similar insurance policies. *See Promotional Headwear Int'l. v. Cincinnati Ins. Co.*, No. 20-CV-2211-JAR-GEB, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020); *4431, Inc. v. Cincinnati Ins. Co.*, No. 5:20-CV-04396, 2020 WL 7075318, at *12 (E.D. Pa. Dec. 3, 2020); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, 2020 WL 6436948, at *1 (S.D. W. Va. Nov. 2, 2020); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *8 (S.D. Fla. Nov. 2, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *8 (S.D. Ala. Oct. 21, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *5 (C.D. Cal. Oct. 2, 2020), *appeal docketed*, No. 20-56031 (9th Cir. Oct. 6, 2020); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *6 (N.D. Ga. Oct. 6, 2020), *appeal docketed*, No. 10-14156 (11th Cir. Nov. 4, 2020); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ, 2020 WL 5820552, at *1 (S.D. Iowa Sept. 29, 2020), *appeal docketed*, No. 203211 (8th Cir. Oct. 21, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *6 (N.D. Cal. Sept. 14, 2020), *appeal docketed*, No. 20-16858 (9th Cir. Sept. 24, 2020); *Turek Enters. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, --- F. Supp. 3d ----, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020). *But See Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *4 (W.D. Mo. Aug. 12, 2020) (holding that insureds adequately alleged

Plaintiffs argue that the civil authority orders that caused a suspension in the full operation of their restaurants caused them to suffer "a *physical* loss" of their property. Dkt. 24 at 13. But, as the *Hajer* court noted, the scope of the term "physical loss" is narrower than Plaintiffs contend and "only reasonably read in context as meaning 'a distinct, demonstrable, physical alteration of the property.'" 2020 WL 7211636, at *2 (quoting *Hartford*, 181 F. App'x at 470). The civil authority orders did not cause any tangible physical alteration to Plaintiffs' property. Rather, Plaintiffs were precluded only from fully operating their restaurants temporarily, while the orders were in effect. Plaintiffs do not allege that the restaurants underwent any physical change as a result of the civil authority orders. A "regulation prohibiting people from patronizing a business is not a tangible alteration any property." *Id.* at *3. The only possible change was "an increased public and private perception of the existing threat [of COVID-19], which cannot be deemed a physical change that rendered the property unsatisfactory." *Henry's La. Grill*, 2020 WL 5938755, at *5.[9]

Plaintiffs' businesses, moreover, were never shut down as a result of the civil authority orders. They continued to offer take-out services and, subsequently, limited capacity dine-in services. Thus, Plaintiffs were not denied access to or use of their property. *See Mark's Engine Co.*, 2020 WL 5938689, at *5 (finding that restaurant owner suffered no complete direct physical loss of its property because it always had complete access to the premises, and noting that: "The only

---

that they incurred a direct physical loss to their property where they alleged that COVID-19 made their businesses unsafe and unusable); *K.C. Hopps, Ltd v. Cincinnati Ins. Co.*, No. 20-CV-00437-SRB, 2020 WL 6483108, at *1 (W.D. Mo. Aug. 12, 2020) (same).

[9] In support of their argument that loss of use constitutes "direct physical loss," Plaintiffs rely on the outlier rulings from the Western District of Missouri that COVID-19 can constitute a direct physical loss to property. *See Studio 417*, 2020 WL 4692385, at *4; *K.C. Hopps,* 2020 WL 6483108, at *1. Most courts that have addressed this issue have found that loss of use does not constitute direct physical loss. *See* n.8 *supra*; see also *see also Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 WL 7137110, at *8 (W.D. Mo. Dec. 2, 2020) ("To the extent this Court's ruling—finding the language in the policy plainly and unambiguously does not cover the claims—conflicts with *Studio 417*, *K.C. Hopps* . . . this Court respectfully disagrees with those cases.").

12

individuals who could potentially claim 'direct physical loss of' access to the premises would be patrons who were no longer allowed to dine in."). Accordingly, Plaintiffs have not alleged a direct physical loss of their property from the civil authority orders.

Plaintiffs also argue that COVID-19 itself causes direct physical damage to property because of "the presumed presence of this contagious, infectious disease on physical surfaces in buildings, in the air, and in human beings, transmissible by any of these vehicles." Dkt. 24 at 2.[10] Plaintiffs do not allege that the virus that causes COVID-19 was ever present at either of their restaurants. *See Hajer*, 2020 WL 7211636, at *3 (finding no physical alteration to property where there was no pleading "that the virus itself was present on and altered the property"). Plaintiffs merely speculate that the virus could have been present because of its prevalence in Austin and Dallas. Dkt. 24 at 13. Such conclusory allegations are insufficient to state a plausible claim that Plaintiffs' property was damaged. *See Promotional Headwear*, 2020 WL 7078735, at *8 (finding that plaintiff's allegation that the virus likely contaminated its property failed to raise a right of relief above the speculative level).

Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant. *See id.*; *Uncork and Create*, 2020 WL 6436948, at *5. Plaintiffs have not pled any facts showing that the coronavirus caused physical loss, harm, alteration, or structural degradation

---

[10] In support of their argument that COVID-19 damages property, Plaintiffs rely heavily on Dallas County Judge Clay Jenkins' statement in his March 31, 2020 Order that "[t]he COVID-19 virus causes property loss or damage due to its ability to attach to surfaces for prolonged periods of time." Dkt. 11-4 at 1. This statement is irrelevant to the coverage dispute at issue since the Court must look to the plain terms of the Policy and precedent interpreting similar policies.

to their property. *See Mark's Engine Co.*, 2020 WL 5938689, at *3; *Sandy Point Dental*, 2020 WL 5630465, at *3. As the district court reasoned in *Uncork and Create*:

> COVID-19 poses a serious risk to people gathered in proximity to one another, and the governmental orders closing certain businesses were designed to ameliorate that risk. Property, including the physical location of Uncork and Create, is not physically damaged or rendered unusable or uninhabitable. If people could safely congregate anywhere without risk of infection, the Plaintiff has alleged no facts to suggest any impediment to Uncork and Create's operation. No repairs or remediation to the premises are necessary for its safe occupation in the event the virus is controlled and no longer poses a threat. In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses. The Court is not unsympathetic to the situation facing the Plaintiff and other businesses. But the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage.

2020 WL 6436948, at *5.

Plaintiffs also fail to demonstrate that they are entitled to business interruption losses under the following civil authority provision of the Policy:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Dkt. 1-1 at 733. This provision requires (1) damage to a property within one mile of the insured property, and (2) an order of civil authority prohibiting access to the neighboring property after it

was damaged. Plaintiffs meet neither element. Just as COVID-19 did not cause direct physical loss to Plaintiffs' property, Plaintiffs do not allege that the pandemic caused direct physical loss to other property. *See Sandy Point Dental*, 2020 WL 5630465, at * 3 (holding that civil authority provision did not apply where there was no physical loss to other property). Plaintiffs also do not allege that the civil authority orders were issued as a result of loss of their property, but rather that they caused the property loss. The civil authority provision "requires the physical damage to prompt the act of civil authority, not the other way around." *Hajer*, 2020 WL 7211636 at *4. Accordingly, Plaintiffs' claim for civil authority coverage fails.

### C. Restaurant Extension Endorsement

Plaintiffs argue that even if the business interruption loss provision is inapplicable, they still are entitled to coverage under the Restaurant Extension Endorsement, which modifies the Building and Personal Property Coverage, the Business Income (and Extra Expense) Coverage, the Business Income (Without Extra Expense) Coverage, Causes of Loss, and Commercial General Liability Forms of the Policy. This provision provides coverage for food spoilage and contamination, certain medical expenses, and:

> a. The "suspension" of your "operations" at the described premises due to the order of a civil authority; or adverse public communications or media reports, resulting from the actual or alleged:
>
> (1) Food or drink poisoning of a guest at the described premises; or
>
> (2) Exposure of the described premises to a contagious or infectious disease.
>
> b. The "period of restoration" for this Cause of Loss will begin 24 hours after you receive notice of closing from the Board of Health or any other governmental authority and will not exceed 30 consecutive calendar days from the date of the suspension of your "operations".

*Id.* at 467. "Suspension" is "the slowdown or cessation of your business activities." *Id.* at 739. Thus, the business need not be completely shut down to trigger the provision.

Plaintiffs argue that, in contrast to the business interruption loss provision discussed above, the Restaurant Endorsement does not require a showing of direct physical loss of or damage to property. Plaintiffs contend that their claim is covered under this provision because they suspended their business operations as a result of the civil authority orders issued in response to COVID-19, an infectious disease.

Plaintiffs, however, have glossed over the requisite elements of this provision. Although Plaintiffs are correct that the Restaurant Endorsement does not require direct physical loss or damage to property to trigger coverage, the clear terms of the provision require Plaintiffs to show (1) a suspension of business operations (2) due to a civil authority order (3) that was issued in response to the actual or alleged exposure of the premises to a contagious or infectious disease. Plaintiffs have not met the third requirement.

First, as noted earlier, Plaintiffs do not allege in their Petition that their restaurants were ever exposed to the virus that causes COVID-19. Plaintiffs merely speculate that the virus could have been present because it was prevalent in the Austin and Dallas communities. *See* Dkt. 24 at 1 (noting the "presumed presence" of COVID-19); *id.* at 13. Such conclusory allegations are insufficient to show that this provision is applicable. *See Promotional Headwear*, 2020 WL 7078735, at *8.

In addition, Plaintiffs must show that the civil authority orders were issued as a result of the presence of COVID-19 at their restaurants. But the civil authority orders did not result from the actual or alleged exposure to COVID-19 at Plaintiffs' restaurants. The civil authority orders were issued in response to the global pandemic, not in response to the actual or alleged presence of the virus that causes COVID-19 at Plaintiffs' restaurants. Accordingly, Plaintiffs have not demonstrated the causal connection required for coverage. *See Nat'l Union Fire Ins. Co. of*

16

*Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (holding that policy language covering injury "caused by an accident *resulting from* the . . . use of a covered auto" required a causal relationship between the injury and use of the auto). The Court finds that the Restaurant Endorsement Provision does not apply.[11]

Because Plaintiffs have not demonstrated that their insurance claim is covered under the Policy, they have not alleged a plausible breach of contract claim. *See Vizza Wash*, 2020 WL 6578417, at *6. Accordingly, Safe Auto's Rule 12(c) Motion should be granted with regard to Plaintiffs' breach of contract claim and request for declaratory judgment that Plaintiffs' claim is covered under the Policy.

### D. Plaintiffs' Texas Insurance Code and Bad-Faith Claims

Safe Auto argues that Plaintiffs' Texas Insurance Code and common law breach of the duty of good faith and fair dealing claims also should be dismissed. Plaintiffs do not respond to Safe Auto's arguments. By failing to respond to Safe Auto's arguments, Plaintiffs have failed to sustain their burden of proof and appear to have abandoned those claims. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (stating that plaintiff abandoned her claim because she failed to defend it in her response to the defendant's motion to dismiss and failed to pursue the claim beyond her complaint)); *Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned.").

---

[11] Because the Court finds that the Policy does not provide coverage in this case, there is no need to address the virus exclusion provision. *See Mudpie,* 2020 WL 5525171, at *7 n.9 ("Because Mudpie is not entitled to Civil Authority coverage, the Court need not consider Travelers's additional argument that the virus exclusion bars such coverage.").

Plaintiffs' extra-contractual claims would fail even if Plaintiffs had not abandoned them. "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015). For an insured to recover on a bad-faith insurance claim when the insurer has properly denied coverage for the claim, the insured must demonstrate that the insurer has committed an injury independent of the policy claim. *Id.* Similarly, "an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018). In addition, misrepresentation claims under the Texas Insurance Code that are based on a party's failure to fulfill its contractual duties are more properly raised as breach of contract claims and should be dismissed. *Travelers Lloyds Ins. Co. v. Cruz Contracting of Texas, LLC*, No. 5:16-CV-759-DAE, 2017 WL 5202890, at *6 (W.D. Tex. Mar. 17, 2017). Based on the foregoing, Safe Auto's Rule 12(c) Motion to dismiss Plaintiffs' extracontractual claims should be granted.

### E. Request to Amend

Plaintiffs request an opportunity to file an amended complaint to cure any pleading insufficiencies. Because the Court has determined that there is no coverage for Plaintiff's losses in this case under the clear terms of the Policy, any attempt to amend the Petition would be futile. *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (stating that a district court may properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss"); *4431*, 2020 WL 7075318, at *12 (denying leave to amend where "[t]he terms of the Policies are not in dispute, and there is nothing else Plaintiffs could allege that would bring their claimed losses within the Policies' coverage"). Accordingly, Plaintiffs' request to amend should be denied.

## F. Conclusion

In essence, Plaintiffs seek to recover economic damages they sustained as a result of the COVID-19 pandemic and associated civil authority orders under a commercial property insurance policy. While the Court is not unsympathetic to Plaintiffs' financial losses, the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property loss or damage to their property. As the district court in *Uncork and Create* reasoned:

> COVID-19 poses a serious risk to people gathered in proximity to one another, and the governmental orders closing certain businesses were designed to ameliorate that risk.
>
> ***
>
> In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses. The Court is not unsympathetic to the situation facing the Plaintiff and other businesses. But the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage.

2020 WL 6436948, at *5.

## IV. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** State Automobile Mutual Insurance Co.'s Motion for Judgment on the Pleadings (Dkt. 11) and enter Judgment in Defendant's favor. The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** Plaintiffs' leave to amend as futile.

It is **FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made.

The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

   **SIGNED** on December 14, 2020.

                                         _____
                                         SUSAN HIGHTOWER
                                         UNITED STATES MAGISTRATE JUDGE